UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:24-CV-00022-LLK

GEOFFREY N.                                                                                                              PLAINTIFF

v.

MICHELLE KING,
Acting Commissioner of Social Security                                                                DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Final Decision of the Commissioner denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.[1] [DN 1]. Plaintiff's Fact and Law Summary is located at DN 12, and the Commissioner's responsive Fact and Law Summary is located at DN 17. No Reply was filed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit. [DN 6]. The matter is now ripe for determination.

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's (ALJ's) Decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's Final Decision and DISMISS Plaintiff's Complaint.

---

[1] Old Age, Survivors, and Disability Insurance Benefits (OASDI or DIB) is a benefit available under Title II of the Social Security Act. 28 U.S.C. § 423. Eligibility for DIB funds is based upon contributions that individuals make via Federal Insurance Contributions Act (FICA) taxes for earnings during their working years. For purposes of DIB, a claimant must have sufficient working quarters and still be within their "insured" period to qualify for DIB. The Social Security Administration manages this program and uses a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

**Administrative History**. According to the ALJ's Decision, Plaintiff filed his Title II DIB application on August 4, 2021, alleging disability from November 15, 2019, as a result of left bundle branch block, medicine resistant hypertension, chronic fatigue, weakness, nonischemic cardiomyopathy, shortness of breath with exertion, chronic kidney disease, memory issues, and possible heart failure. [DN 5] at 29, 183. He was 50 years old at the time of filing. His claim was denied initially on January 31, 2022, [DN 5] at 66, and again upon reconsideration on April 8, 2022 [DN 5] at 73. Thereafter, Plaintiff requested a hearing before an ALJ, which was granted. Due to COVID-19, ALJ Jennifer Thomas conducted the hearing by video conference with Plaintiff and his representatives Donna Sue Thornton Green and Millicent Polivick. [DN 5] at 29. Jennifer Guediri, an impartial vocational expert, provided testimony at the hearing via telephone. *Id*. The ALJ evaluated the evidence of record using the requisite five-step sequential evaluation process. On January 4, 2023, the ALJ issued her written Decision, [DN 5] at 29-38, and found that Plaintiff was not disabled.

Plaintiff timely requested review of the ALJ's Decision by the Appeals Council, and on February 10, 2023, and March 23, 2023, the Appeals Council granted him extensions of time in which to file a statement of facts and law and/or additional evidence. [DN 5] at 19-20; 11-12. On December 4, 2023, the Appeals Council denied Plaintiff's request for review. [DN 5] at 5-7. As a result of the Appeals Council denial, the ALJ's Decision became the final Decision of the Commissioner and subject to judicial review in this Court. 42 U.S.C. §§ 405(g) and (h); 20 C.F.R. § 422.210(a).

**The ALJ's Decision**. The ALJ's Decision, [DN 5] at 29-38, denying Plaintiff's claim for DIB was based on the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024, and that he has not engaged in substantial gainful activity since November 15, 2019, the alleged onset date (20 CFR 404.1571 et seq.). [DN 5] at 32.

Second, the ALJ found that Plaintiff has the following severe impairments: nonischemic cardiomyopathy, chronic systolic and diastolic congestive heart failure, hypertension (HTN), and chronic left bundle branch block (LBBB) (20 CFR 404.1520(c)). *Id*.

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). In making an RFC determination, the ALJ considers the record in its entirety. 20 C.F.R. § 404.1545(a)(3). The ALJ found that, notwithstanding his impairments, Plaintiff can perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to sit, stand, and/or walk for up to 30 minutes at a time for six hours each in an eight-hour workday; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; no exposure to moving mechanical parts and unprotected heights; occasional exposure to concentrated atmospheric conditions as defined by the SCO/DOT; and occasional exposure to temperature extremes.

[DN 5] at 33.

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work (20 CFR 404.1565). [DN 5] at 36.

Fifth, the ALJ found that Plaintiff was born on October 13, 1969 and was 50 years old, which is defined as an individual approaching advanced age, on the alleged disability onset date

(20 CFR 404.1563); that Plaintiff has at least a high school education (20 CFR 404.1564); that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2); and after considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). [DN 5 at 37].

**Standard of review**. The Court's task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec*., 299 F.App'x 516, 522 (6th Cir. 2008). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs*., 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec*., 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*.

Because Plaintiff filed his DIB claim in August of 2021, the new rules for weighing medical opinions apply. See 20 C.F.R. § 404.1520c ("For claims filed … on or after March 27, 2017, the rules in this section apply.") Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. § 404.1520c(a). Instead, in determining the

persuasiveness of a medical opinion, an ALJ is to consider "supportability, consistency, relationship [with the claimant], specialization, and other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). However, the ALJ need only explain how s/he considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 1520c(b)(2). Without the treating physician rule, the applicable regulations allow the ALJ "to evaluate the persuasiveness of submitted medical opinions, with particular focus on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645 at *6 (6th Cir. June 12, 2024).

**Relief sought by Plaintiff**. Plaintiff disputes findings 3, 5, 9, 10, and 11, taking issue with the ALJ's handling of his allegations of disabling fatigue and asking this Court for a Sentence Four remand of the case for Medical Expert testimony and/or proper consideration of his fatigue. [DN 12 at 11]. He alleges that: (1) the ALJ erred at Step Two of the sequential evaluation process by not finding his chronic fatigue to be a severe impairment; (2) the ALJ erred in her RFC findings by relying upon the findings of two state agency medical consultants who did not properly consider the chronic fatigue documented in his medical records; and (3) the ALJ failed to properly consider and weigh his symptom of fatigue as required by 20 C.F.R. § 404.1529(c)(2). [DN 12] at 3.

A district court's authority to remand a case … is found in 42 U.S.C. § 405(g) …" *Hollon ex. rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 482-83 (6th Cir. 2006). The Social Security Act authorizes two types of remand: 1) a post judgment remand in conjunction with a decision affirming, modifying or reversing a decision of the [Commissioner] (a Sentence 4 remand); and 2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously present to the [Commissioner] (a Sentence 6 remand). *See Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Sentence Four

5

authorizes remand for further administrative proceedings (and sometimes a judicial award of benefits) if Plaintiff shows that the ALJ's Decision is not supported by substantial evidence in the administrative record that was before the ALJ.

**A Sentence Four remand is not warranted, as the ALJ's findings at Step Two are supported by substantial evidence**. As noted above, the ALJ found that Plaintiff suffers from severe (vocationally significant) nonischemic cardiomyopathy, chronic systolic and diastolic congestive heart failure, hypertension (HTN), and chronic left bundle branch block (LBBB). [DN 5] at 32. However, Plaintiff argues that the ALJ erroneously failed to identify chronic fatigue as a severe impairment at Step Two, or to otherwise address Plaintiff's symptom of fatigue in her Decision, stating: "The ALJ does not consider chronic fatigue as a severe impairment in the decision and no rationale is provided. Mr. N[2] has been diagnosed with chronic fatigue by his treating cardiologist. The effects of this condition are clearly limiting." [DN 12 at 10]. This Court's review of the evidence reveals that counsel's opening statement addressed Plaintiff's high blood pressure and fatigue [DN 5] at 50-51, that the ALJ asked questions about Plaintiff's fatigue and its affect upon his ability to sit/stand/walk [DN 5] at 57, and that Plaintiff was questioned about how his physicians have sought to address the fatigue [DN 5] at 59-60. And contrary to Plaintiff's assertions, the ALJ did address his complaints of fatigue in her written Decision at DN 31-32.

Plaintiff's argument that his chronic fatigue should have been deemed severe at Step Two fails for several reasons. First, Plaintiff bears the burden of proving his impairments are severe, as the mere diagnosis of chronic fatigue says nothing about its severity. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). No treating physician has attributed Plaintiff's chronic fatigue diagnosis as "significantly" limiting to his physical ability to do "basic work activities." 20 C.F.R. §

---

[2] Pursuant to General Order No. 22-05, this Court has adopted the practice of using only a claimant's first name and last initial in its Social Security opinions.

404.1522(a). In addition, it is at most harmless error for an ALJ to fail to find an impairment non-severe at Step Two of the sequential evaluation process where the ALJ considered the impact of all severe and non-severe impairments on the claimant's ability to work at later steps in the evaluation. The ALJ's Decision reflects that she did just that, noting:

> The undersigned finds the additional impairments medically determined in the record to be non-severe because these either did not exist for a continuous period of twelve months, were responsive to medication, are accommodated by the determined residual functional capacity, did not require significant medical treatment, or did not result in any continuous exertion or non-exertion functional limitations.

[DN 5 at 32].

> Further, there are no significant objective medical findings or identification of work-related limitations in the record, which exist in order for these medically determinable impairments to be considered severe within the meaning of the regulations. Accordingly, these medically determinable impairments produce no more than minimal limitations upon the claimant's ability to perform work-related activities and are non-severe. Regardless, the undersigned has considered all the claimant's medically determinable impairments, severe and non-severe, in the formation of the residual functional capacity findings in this decision.

[DN 5 at 33].

The Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of Step Two of the analysis. *See Anthony v. Astrue*, 266 F. Appx. 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). In this case, the ALJ found Plaintiff's chronic fatigue to be non-severe and yet considered it "in the formation of the residual functional capacity findings in this decision." [DN 5] at 33. Put another way, when an ALJ finds at least one severe impairment at the Step Two "threshold inquiry" phase, the claimant's case proceeds to the next step in the sequential evaluation

process, "which was all [the claimant] could have asked for." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 658 (6th Cir. 2009).

**A Sentence Four remand is not warranted, as the physical limitations set forth in the ALJ's RFC findings are supported by substantial evidence**. Plaintiff contends that the RFC found by the ALJ is flawed because it did not properly take into account Plaintiff's complaints of fatigue and diagnosis of chronic fatigue. The Decision indicates that the ALJ's RFC analysis was prepared "[a]fter careful consideration of the entire record," and that analysis constitutes four pages of her ten-page written Decision. [DN 5] at 33-36. Consistent with the regulatory requirements, the ALJ addressed both the objective medical evidence and Plaintiff's subjective allegations regarding his alleged impairments and associated limitations. *See* 20 C.F.R. § 404.1545(a)(3) (requiring same). Plaintiff urges that the ALJ erred by interpreting the medical evidence as though she were a medical doctor. [DN 12] at 4. The disabling symptom Plaintiff attributes to both his heart condition and as a medication side effect is the same complaint—fatigue. Counsel accuses the ALJ of being "willfully obtuse" in handling this symptom and devotes several pages to summarizing Plaintiff's testimony of fatigue and to medical records in which fatigue is merely noted in a "Patient Active Problem," "Subjective," and/or "Diagnosis" list.[3] This Court's review of Plaintiff's medical records and of the ALJ's findings pertaining to his fatigue reveals not an ALJ playing doctor, but instead an ALJ whose opinion cites to objective medical findings already interpreted by medical professionals in the record.

Furthermore, it is the ALJ who is solely responsible for assessing a claimant's RFC, not a medical source. 20 C.F.R. 1546(c). It is the province of an ALJ to formulate the restrictions in a

---

[3] One such medical record also indicates a period of improvement in which Plaintiff was playing tennis [DN 5 at 307 (5/27/2020)].

claimant's RFC based upon all of the relevant and other evidence of record; an ALJ's RFC finding need not correspond to any particular physician's opinion. 20 C.F.R. § 404.1545. None of Plaintiff's treating physicians opined that Plaintiff's fatigue (or conditions in general) were of disabling severity. State agency doctors Meece and Booth reviewed and summarized the medical evidence, noted in their reports Plaintiff's complaints of fatigue and weakness, and concluded that Plaintiff could perform light work with some additional limitations. [DN 5] at 66-72; 73-79. Giving Plaintiff the benefit of the doubt, the ALJ adopted additional limitations above and beyond those recommended by the state agency physicians in order to accommodate Plaintiff's fatigue in her RFC findings.

The ALJ determined that Plaintiff could perform a range of light work as defined in 20 C.F.R. § 404.1567(b) with exceptions that, in an eight-hour workday, he could:

1) sit, stand and/or walk for up to 30 minutes at a time for six hours each;

2) occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds;

3) occasionally stoop, kneel, crouch, and crawl;

5) have no exposure to moving mechanical parts and unprotected heights;

6) have only occasional exposure to concentrated atmospheric conditions as defined by the SCO/DOT; and

7) have only occasional exposure to temperature extremes.

As noted above, Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x 586, 589 (6th Cir. 2019). Furthermore, an ALJ "can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). The undersigned finds that the ALJ's RFC findings are supported by the medical evidence of record as set forth in her Decision.

9

In cases such as this one, where the record is extensive, it stands to reason that not every piece of evidence can be addressed in the ALJ's Decision. The administrative record reviewed by the undersigned consists of almost 900 pages. Laudably, the ALJ committed 5 pages of her 10-page opinion to reviewing and summarizing the medical and other evidence in Plaintiff's file.

**A Sentence Four remand is not warranted, as the ALJ properly evaluated Plaintiff's symptoms in assessing the extent of his limitations under 20 C.F.R. § 404.1529(c)**. Plaintiff notes that 20 C.F.R. § 404.1529 sets forth the standard for evaluation of a claimant's symptoms, arguing that "[i]n this case, Mr. N has several medically supported impairments that could reasonably be the cause of his pain."[4] Indeed, both the regulation and SSR 16-3p require that the ALJ consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. First, the ALJ must determine whether there is an impairment that can be shown by medically acceptable clinical or laboratory diagnostic techniques that could reasonably be expected to produce the claimant's symptom(s). Second, once the ALJ identified that physical impairment, the ALJ is charged with evaluating the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. Where statements regarding the intensity, persistence or functionally limiting effects of the symptom is not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities. 20 C.F.R. § 404.1529(c)(3).

In this instance, the ALJ noted that Plaintiff alleged "debilitating physical impairments" of shortness of breath and fatigue, with difficulty sitting, standing, and walking as a result of his

---

[4] [DN 12] at page 3. The Court presumes that counsel intended "fatigue" rather than "pain" as the symptom referenced here.

cardiac limitations and trace edema. [DN 5] at 30. However, the ALJ did not find Plaintiff's alleged symptoms to be consistent with the evidence of record:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> An analysis of the objective medical evidence demonstrates the claimant is capable of light work activity consistent with the residual function capacity findings including climbing limitations, postural limitations, hazard limitations, atmospheric limitations, and temperature limitations. As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent due to imaging and testing, findings on examination, treatment history, and activities of daily living including driving, shopping, performing household chores, walking his dog, and mowing his lawn with a push mower.

[DN 5 at 34].

The ALJ further explained in her Decision why Plaintiff's debilitating allegations of fatigue and decreased stamina were inconsistent with his "treatment history generally limited to medication management." The ALJ also focused on Plaintiff's reported activities of daily living as being inconsistent with his debilitating allegations, noting:

> The claimant's activities of daily living are inconsistent with the claimant's debilitating allegations. In fact, some of the claimant's activities of daily living contradicted the claimant's alleged symptoms. The claimant wrote he performed personal care, cared for two dogs, prepared meals, performed household chores, drove and shopped (Ex. 3E, 4E, 5E, 9E, and 10E). The claimant reported he was able to perform personal care, household chores, meal preparation, and household shopping (Ex. 5F). The claimant testified that he drives, shops, walks his dog, and mows his lawn with a push mower (Testimony). Although the claimant's impairments certainly caused some limitations, some of the abilities required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. Even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical conditions, as opposed to other reasons, in view of the relatively benign medical evidence and other factors discussed in this decision. The medical evidence, and in particular, the clinical signs and objective evidence contained in imaging and diagnostic testing, treatment notes, physical and mental status

examinations, and the claimant's high level of daily activities do not support limitations of function consistent with a complete inability to perform all work activity. Accordingly, the claimant's ability to participate in such activities undermines the persuasiveness of his allegations of disabling functional limitations.

[DN 5 at 35]. This discussion of the evidence supplies the necessary, "accurate and logical bridge" between the evidence of record and the ALJ's findings. *Fleischer v. Astrue*, 774 F.Supp. 2d 875, 877 (N.D. Ohio 2011).

Having reviewed the medical records, the Plaintiff's testimony at the hearing, the state agency findings and other evidence in the administrative record, the undersigned finds that the ALJ's Decision stands solidly on substantial evidence. "No principle of administrative law or common sense requires [the Court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Most disability claims have medical and other evidence that could support findings either way; it is the ALJ's job to weigh that evidence and articulate the reasons for either accepting or rejecting it. "[A]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## ORDER

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's Decision is supported by substantial evidence, the Commissioner's final decision is hereby **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**.

January 31, 2025

Lanny King, Magistrate Judge
United States District Court